PHILLIP S. WALLER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Axelrod Roofing Company, Appellee).

First District (Industrial Commission Division)   No. 1—84—2336WC

Opinion filed February 26, 1986.—Rehearing denied June 13, 1986.

Phillip S. Waller, of Chicago, for appellant, *pro se.*

Poulakidas & Wood, of Chicago, for appellee.

JUSTICE McNAMARA delivered the order of the court:

Petitioner, Phillip S. Waller, appeals from an order of the circuit court of Cook County which confirmed a decision of the Industrial Commission denying his petition to vacate a lump-sum settlement contract.

On August 8, 1978, petitioner was injured at work while employed by respondent Axelrod Roofing Company. Petitioner retained Glenn Seiden, who was associated with Joseph A. Vitell, as counsel to secure recovery for his injuries. Petitioner executed the settlement contract lump-sum petition and order on July 23, 1979. The order was submitted to the Commission for approval on July 25, 1979, and it was approved on July 27, 1979. The settlement contract provided that petitioner was to receive $2,500 in full settlement of his work-related injuries.

In October 1982, petitioner filed a petition to vacate the settlement contract lump-sum petition and order on the basis that the set-

tlement was procured by fraud. In the petition, petitioner alleged that no medical reports were presented to the arbitrator or Commission at the time of its approval. Section 7(1)(b) of the Rules Governing Practice Before the Industrial Commission requires that such a report be attached to the settlement contract. Thereafter, hearings on the petition were conducted by Commissioner Black on November 1 and December 3, 1982. The initial hearing was commenced and then continued to enable petitioner to obtain counsel. At the initial hearing, petitioner also indicated he wished to subpoena Seiden to testify.

At the hearings, petitioner testified that he had been told by Seiden "to sit tight," and petitioner would collect a large settlement. Petitioner stated that he signed the settlement contract in a dimly lighted hallway at the Commission offices. He subsequently stated that he could not recall the lighting condition. Petitioner testified that he had seen the contract three times before he finally signed it. Petitioner stated that several irregularities appeared on the face of the settlement contract. The filled-in answer to one question recited that petitioner had returned to his regular employment, while in fact he had been discharged and was still unable to work because of his injury. An answer to another question recited that a doctor's report was attached to the settlement contract, but no such report was to be found in the Commission's files. He testified that he had been examined by Dr. Alan D. Busch and Dr. Leonard Smith prior to the signing of the settlement contract, and that Dr. Smith's May 1979 report, which should have been attached to the 1979 settlement contract, was transcribed on May 28, 1982. Petitioner also introduced into evidence a subpoena issued for Dr. Busch's report and the response which stated that Dr. Busch found no written records concerning petitioner's examination.

Joseph Vitell testified that petitioner signed the settlement contract in his law office on July 23, 1979. On July 25, 1979, Vitell submitted the settlement contract to the assignment clerk at the Commission with, as he recalled, Dr. Smith's report attached. Vitell testified that Dr. Smith's May 1979 medical report was first transcribed in 1979, and a copy of the same report was apparently retyped in 1982, when it was subpoenaed by petitioner. Vitell thought he was aware that petitioner was unemployed at the time of the submission of the settlement contract.

Norman Brown, the arbitrator who approved the settlement contract, testified that although he could not specifically recall reviewing a medical report, he would not have approved a settlement contract without such a report, unless it was for disfigurement. Brown also

testified that in the years Vitell had been practicing before the Commission, Brown did not believe that Vitell had ever submitted a settlement contract to Brown without a medical report. Brown further testified that after settlement contracts were approved, the medical reports are attached to the file by a paper clip. He noted that the settlement contracts then go through a series of clerical operations during which it is possible that a medical record can be detached.

Although one of the reasons advanced by petitioner for having the first hearing continued was to produce Seiden as a witness, petitioner did not offer Seiden as a witness at the second hearing.

On April 21, 1983, the Commission entered its decision finding that petitioner had failed to prove the existence of fraud. The Commission found that although no medical records now appear in its file, petitioner failed to overcome the presumptions created by Arbitrator Brown's act of approval and his testimony that he followed proper procedure.

As to petitioner's claim that he was coerced into signing an incomplete and inaccurate settlement contract, the Commission found that petitioner's testimony was inconsistent, ambiguous and contradictory. The Commission found some inconsistency with regard to petitioner's employment status at the time of the settlement contract, but noted that petitioner had executed the settlement contract and that directly above his signature appeared the following statement: "I HAVE READ THIS DOCUMENT. I UNDERSTAND ITS TERMS AND SIGN IT VOLUNTARILY." The Commission thereupon denied petitioner's petition to vacate the settlement contract, and the circuit court of Cook County confirmed the Commission's decision.

The decision of the Commission that the settlement contract in question was not secured by fraud is not contrary to the manifest weight of the evidence. The existence of fraud is ordinarily a question of fact to be determined by the trier of fact. (*Chalkowski v. Szafranski* (1928), 250 Ill. App. 359.) The decision of the trier of fact, once made, will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Bailey v. Meador* (1980), 91 Ill. App. 3d 143, 414 N.E.2d 279.

In the present case, the Commission, as trier of fact, rejected petitioner's contention that he was coerced into signing the settlement contract. There is ample evidence in the record to support that finding. Petitioner's testimony on the issue of coercion was vague and inconsistent. His sole claim was that after seeing the contract three times, he finally signed it. That limited testimony not only failed to support petitioner's charge of coercion, but it was also disputed by Vi-

tell. The Commission was entitled to find that petitioner was not coerced into signing the settlement contract.

With regard to petitioner's argument about the absence of a medical report, the Commission could properly accept, as it did, the arbitrator's testimony that he would not have approved the settlement contract without a medical report being attached to the petition and order and that he followed the proper procedure. In that regard, we note that petitioner has never challenged the fact that he had been examined by Dr. Smith and Dr. Busch. In any event, under the circumstances before us, even the absence of an attachment of a medical report would not void the settlement contract on the basis of fraud. There was an inaccuracy in the settlement contract which recited that petitioner had returned to work. That misstatement, however, does not even suggest the existence of fraud. The Commission's decision that petitioner failed to establish fraud in the execution of the settlement contract is not contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County confirming the decision of the Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.